IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MILES ALEXANDER,                          ) | CIVIL NO.  06-00595 JMS/KSC |
| ) | |
| Plaintiff,           ) | ORDER: (1) GRANTING IN PART |
| ) | AND DENYING IN PART |
| vs.              ) | DEFENDANT CITY AND COUNTY |
| ) | OF HONOLULU'S MOTION FOR |
| CITY AND COUNTY OF             ) | SUMMARY JUDGMENT; AND |
| HONOLULU; LEE PACLIB, Police    ) | (2) DENYING DEFENDANT |
| Officer; JOHN DOES 1-10, Police   ) | PACLIB'S MOTION FOR SUMMARY |
| Officers,              ) | JUDGMENT |
| ) | |
| Defendants.          ) | |
| _____ ) | |

## ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION FOR SUMMARY JUDGMENT; AND (2) DENYING DEFENDANT PACLIB'S MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

On October 28, 2007, Plaintiff Miles Alexander ("Plaintiff") filed an

Amended Complaint against the City and County of Honolulu ("City and

County") and Honolulu Police Department ("HPD") Officer Lee Paclib ("Paclib"),

(collectively "Defendants"), alleging violations of his constitutional rights

pursuant to 42 U.S.C. § 1983, and pendant state law claims.  Before the court are:

(1) the City and County's Motion for Summary Judgment, and (2) Paclib's Motion

for Summary Judgment.

Based on the following, the court GRANTS in part and DENIES in part the City and County's Motion for Summary Judgment, and DENIES Paclib's Motion for Summary Judgment.

## II. <u>BACKGROUND</u>

### A.   Factual Background

Plaintiff's claims stem from his arrest for harassment on November 30, 2004 on Pauahi Street in the Chinatown area of Honolulu. *See* Pl.'s Ex. 2. Because the parties provide radically different versions of events, both supported by declarations, the court outlines the aspects of each version relevant to Defendants' Motions.

### *1.   Plaintiff's Version*

Plaintiff, an African-American male, asserts that he was walking along Pauahi Street in Honolulu when several HPD officers approached in a vehicle and ordered him to leave the area. Pl.'s Decl. ¶ 5. After Plaintiff responded that "[y]ou have the wrong person," the officers assaulted him, forced him to the ground, continued to beat him, and arrested him. Pl.'s Decl. ¶¶ 6-9. Plaintiff asserts that he "never touched any of the officers until they all grabbed [me] and touched [me]," and "never resisted anything." Pl.'s Decl. ¶¶ 7 & 9; *see*

*also* Pl.'s Ex. 2, Franks testimony (stating that Plaintiff did not fight back or kick, but did not give the officers his hands).

Next, two officers took Plaintiff to The Queen's Medical Center so that a doctor could inspect his injured head.  Pl.'s Decl. ¶¶ 10-12.  Plaintiff asserts that he did not see "the registration people" at the hospital; instead, Officer Franks took him into an empty room.  Pl.'s Decl. ¶ 11; *see also* Pl.'s Ex. 3, Consent to Treatment (signed by Officer Franks).  Without provocation, Franks took Plaintiff outside and choked and kneed him while Plaintiff remained handcuffed.  Pl.'s Decl. ¶¶ 14-16.  Franks then took Plaintiff back to the room, where the doctor gave Plaintiff aspirin.  Pl.'s Decl. ¶ 17; *see also* Pl.'s Ex. 4 (stating that Plaintiff's chief complaint is a headache).  Plaintiff further asserts that he was not intoxicated during this incident.  Pl.'s Decl. ¶ 19.

### 2.   *Defendants' Version*

Defendants assert that on November 30, 2004, HPD was conducting an undercover drug operation in the Chinatown area of Honolulu.  Paclib Decl. ¶ 4.  Officer Sellers was assigned to monitor the area through video surveillance, and notify officers of any individuals that might jeopardize the operation and need to be escorted out of the area.  Sellers Decl. ¶¶ 5-6.  Sellers saw Plaintiff in the area, who appeared to be warning bystanders of HPD's operation.  Sellers Decl.

¶¶ 10-11.  Sellers therefore made a radio announcement that an African-American male, who was bald, slim, and wearing dark clothes, was jeopardizing the operation.  Sellers Decl. ¶ 13; Paclib Decl. ¶¶ 8-10.  Sellers later saw Plaintiff in the area again, and radioed this information to Officer Feigenspan.  Sellers Decl. ¶ 18.

Officers Paclib, Franks and Feigenspan were assigned to clear the area of pedestrian traffic.  Paclib Decl. ¶ 4; Franks Decl. ¶ 5; Feigenspan Decl. ¶ 4. After receiving Sellers' radio call, they drove to the area, exited the vehicle, and approached Plaintiff, who fit the description Sellers provided.  Paclib Decl. ¶¶ 11-13.  Paclib asserts that he showed Plaintiff his badge, and asked that he leave the area.  Paclib Decl. ¶¶ 11-14.  Plaintiff refused to leave, stated that he wanted to go to the liquor store, and then shoved Paclib.  Paclib Decl. ¶¶ 17-19.  In response, Paclib "took Plaintiff to the ground," where Plaintiff struggled and stood back up until Paclib and Feigenspan took him down again.  Paclib Decl. ¶ 20.  The officers eventually handcuffed Plaintiff, who then complained of pain.  Paclib Decl. ¶ 22.

Officers Feekin, Franks, Feigenspan, and Paclib took Plaintiff to The Queen's Medical Center.  Paclib Decl. ¶ 25.  Franks accompanied Plaintiff into the hospital while Feigenspan and Paclib waited in the hallway.  Paclib Decl. ¶ 27. Plaintiff was "loud and unruly" at the hospital registrar, despite Franks' requests

4

that he lower his voice.  Franks Decl. ¶¶ 28-30; Norton Decl. ¶¶ 5-7.  Plaintiff

continued to act unruly, and at one point, Plaintiff "challenged [Franks] by putting

his face within a few inches of [Franks'] face."  Franks Decl. ¶ 35.  Franks

grabbed Plaintiff by the arm, put his forearm across Plaintiff's chest, and told him

to calm down.  Franks Decl. ¶ 37.

After Plaintiff got in Franks' face a second time, Franks escorted

Plaintiff out of the emergency room.  Franks Decl. ¶¶ 38-39.  Outside the hospital,

Plaintiff continued his behavior, and Franks subdued him by kneeing him in his

left thigh.  Franks Decl. ¶ 43.  Finally, Plaintiff calmed down enough to be seen by

the doctor, and was subsequently transported to HPD for booking.  Franks Decl.

¶¶ 44-45.

## B.    Procedural Background

Plaintiff filed his original Complaint on November 3, 2006, which

raised nine causes of action against the City and County of Honolulu Police

Department, Police Chief Boisse Correa, and several police officers.  The

Complaint alleged claims under 42 U.S.C. § 1983 for violations of the following

Amendments to the Constitution: Sixth Amendment (count 4), Eighth Amendment

(counts 1, 3, 4, 5), and Fourteenth Amendment (counts 2, 3, 4, 5).  Plaintiff further

alleged state law claims of false arrest (count 6), negligence (count 7), and assault

and battery (count 8) and sought punitive damages against all Defendants (count 9).

On September 24, 2007, the court heard argument on the City and County's Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c).[1]  In its September 28, 2007 Order, the court granted in part and denied in part the City and County's Motion for Judgment on the Pleadings, with leave for Plaintiff to file an Amended Complaint.

On October 28, 2007, Plaintiff filed an Amended Complaint, alleging claims titled as follows: (1) Fourth Amendment Claim Under Section 1983; (2) Fourteenth Amendment Due Process and Equal Protection Claim Under Section 1983 and Fourth Amendment; (3) Illegal Custom and Practice; Failure to Supervise Fourth and Fourteenth Amendment Claim Under Section 1983; (4) Fourth and Fourteenth Amendment Claim Under Section 1983; (5) False Arrest - Pendent State Claim; (6) Respondeat[] Superior - Pendent State Claim; (7) Assault and Battery; and (8) Punitive Damages.

On November 29, 2007, Defendants filed their Motions for Summary Judgment.  On January 17, 2008, Plaintiff filed an Opposition to both motions, and

---

[1]  The court also heard argument on: (1) Boisse Correa's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim; and (2) Jeremy Franks' Motion to Quash Service of Process and to Dismiss Complaint.  The court granted these motions in its September 28, 2008 Order.

a Motion for an Enlargement of Time to Complete Discovery so that Defendants could produce arrest reports of other individuals and a videotape of Plaintiff's arrest.  In a January 18, 2008 status conference, the court granted Plaintiff's Motion for an Enlargement of Time, and ordered Defendants to produce documents by February 8, 2008.

In his February 14, 2008 Supplemental Memorandum in Opposition to Defendants' Motion for Summary Judgment, Plaintiff argued that Defendant still had not produced relevant documents.  In a February 19, 2008 status conference, the court ordered Defendant to search for and/or produce any additional documents responsive to Plaintiff's document requests for arrest reports, and the videotape of Plaintiff's arrest.  On February 22, 2008, Defendants submitted Replies, and a statement explaining why no additional documents were found.  A hearing on Defendants' Motions for Summary Judgment was held on February 25, 2008.

### III.  <u>STANDARDS OF REVIEW</u>

While the City and County labels its motion one for summary judgment, the City and County does not argue that Plaintiff failed to raise a material issue of fact in support of his claims.  Rather, the City and County argues that the Amended Complaint does not allege a sufficient basis for Plaintiff's

claims.  The court therefore construes the City and County's Motion as largely arguing for judgment on the pleadings, and applies as appropriate to each of the motions the following standards of review.

## A.    Motion for Judgment on the Pleadings

"Under Federal Rule of Civil Procedure 12(c), judgment on the pleadings is proper 'when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law.'" *Ventress v. Japan Airlines*, 486 F.3d 1111, 1114 (9th Cir. 2007) (*quoting Fajardo v. County of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999)).

## B.    Motion for Summary Judgment

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of

the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (*citing Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co., Inc.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [and] come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (A party cannot "rest on mere allegations or denials of his pleading" in opposing summary judgment).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. An issue is material if the resolution of the factual dispute affects the outcome of the claim or defense under substantive law governing the case. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

9

# IV. <u>ANALYSIS</u>

## A.   Plaintiff's § 1983 Claims

Defendants raise several arguments why Plaintiff's § 1983 claims should be dismissed and/or that summary judgment should be granted, including that: (1) the Amended Complaint does not properly allege any constitutional violations; (2) the Amended Complaint fails to allege municipal liability based on a failure to train custom/practice; and (3) Paclib is entitled to qualified immunity. The court addresses each of these arguments.

### 1.   *Constitutional Violations Alleged in the Amended Complaint*

The City and County argues that the Amended Complaint fails to allege Fourth and Fourteenth Amendment violations, and both Defendants summarily assert that the Amended Complaint fails to allege First or Fifth Amendment violations.

#### a.   *Fourth Amendment Violation*

The City and County argues that Plaintiff has failed to state a Fourth Amendment violation because "Plaintiff does not refer to, or recite any language from, the Fourth Amendment as part of th[e] claim." City & County Mot. 9.

The court rejects that a complaint must recite specific language of the Fourth Amendment to state a violation. The court further finds that all of

10

Plaintiff's § 1983 claims allege Fourth Amendment violations based on excessive force and illegal seizure (i.e, arrest without probable cause) of Plaintiff.[2]  *See, e.g.*, Compl. ¶¶ 22, 32, 39, 48; *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . .").

        b.     *Fourteenth Amendment Violation*

The City and County argues that (1) the Amended Complaint fails to allege a Fourteenth Amendment equal protection claim because Plaintiff does not allege intentional discrimination, and (2) Plaintiff cannot allege a due process violation under the Fourteenth Amendment.  City & County Mot. 9.

A plaintiff can state an equal protection claim in one of two ways. One way is to allege that "defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *See Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998) (*citing Washington v. Davis*, 426 U.S. 229, 239-40 (1976)).  If the acts in question *do not* involve a suspect classification, a plaintiff can alternatively establish an equal

---

    [2]  The court previously found that Plaintiff's claims of excessive force should be brought pursuant to the Fourth Amendment, and granted Plaintiff leave to amend his Complaint.  Doc. No. 52.

protection "class of one" claim by alleging that it "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004).

Even when liberally read, the Amended Complaint fails to state an equal protection violation. The Amended Complaint summarily states that Plaintiff was deprived "Equal Protection of the Law," Compl. ¶¶ 31, 36, but this *conclusion* is insufficient to state a *claim. See Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss [the court] must take all the factual allegations in the complaint as true, [the court is] not bound to accept as true a legal conclusion couched as a factual allegation." (citations omitted)). Plaintiff states neither that Defendants intentionally discriminated against him in violation of his equal protection rights,[3] nor that he was treated

---

[3] The court's September 28, 2007 Order found that the Complaint could be read to allege an equal protection violation based on intentional discrimination by alleging that Defendants "claimed they were looking for a black man of average stature and description and then assaulted the first black man they saw." Doc. No. 52, 20-21. The Amended Complaint still includes this allegation, although it now alleges that this constitutes a violation of Plaintiff's right to Due Process of Law. *See* Compl. ¶ 52. Given the plain words chosen by Plaintiff, this claim cannot be read to allege an equal protection violation.

differently from other similarly situated individuals.[4]  Accordingly, Plaintiff has

failed to state an equal protection violation.

The court also agrees that Plaintiff cannot state a due process

violation of the Fourteenth Amendment based on his allegations of excessive

force.  "[T]he Fourth Amendment sets the applicable constitutional limitations on

the treatment of an arrestee detained without a warrant up until the time such

arrestee is released or found to be legally in custody based upon probable cause

for arrest."  *Pierce v. Multnomah County*, 76 F.3d 1032, 1043 (9th Cir. 1996).

After such time, the Fourteenth Amendment's Due Process Clause governs a

pretrial detainee's excessive force claim.  *See Redman v. County of San Diego*,

942 F.2d 1435, 1440 (9th Cir. 1991) (en banc).  Plaintiff's allegations of excessive

force all occurred prior to the time Plaintiff could be considered a pre-trial

detainee.  Accordingly, the court finds that Plaintiff has failed to state a violation

of his Fourteenth Amendment rights, and GRANTS the motion to dismiss these

Fourteenth Amendment claims.

///

///

---

[4] Count IV alleges that "[t]he Deliberately Indifferent management omissions of the
Defendant (mentioned above in paragraphs 6 to 44[)] are actually done as a part of a system to
deny Plaintiff and similarly situated Plaintiff's the **Equal Protection** of the Law."  Compl. ¶ 49
(emphasis in original).

   *c.*  *First Amendment Violation*

   The City and County asserts that Plaintiff has pled no facts that state a

violation of his First Amendment rights.  While none of the titles of Plaintiff's

claims recites a First Amendment violation, the allegations of the Amended

Complaint, read liberally, appear to allege retaliation for Plaintiff's exercise of his

First Amendment rights.  *See Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th

Cir. 1990) (stating that plaintiff's offensive, verbal opposition to police conduct

"fell squarely within the protective umbrella of the First Amendment and any

action to punish or deter such speech -- such as stopping or hassling the speaker --

is categorically prohibited by the Constitution").

    The Amended Complaint alleges that when officers told him to leave

the area, Plaintiff  "told the Police Officers that he only wanted to go to the store

. . . [and] attempted to continue walking on the public sidewalk to his destination."

Compl. ¶ 10.  In response, the officers assaulted and arrested him.  *Id.* ¶ 12.

Counts II and IV further allege that:

> Defendants['] actions were maliciously done to cover up the
> fact that they had committed an illegal assault upon Plaintiff.
> So the Defendants had Plaintiff charged for the malicious
> purpose of having him falsely convicted, and to deny Plaintiff
> his right to Due Process and Equal protection of the law, his
> right to Freedom of Speech, his right to commerce, his right to

travel, and his right to free association, and his 4th Amendment right to be free from unreasonable search and seizure.

Compl. ¶ 36; *see also id.* at ¶ 62.  While not readily apparent, the court finds that

Plaintiff has alleged a First Amendment violation.

> d.     *Fifth Amendment Violation*

The City and County asserts that Plaintiff cannot allege a Fifth

Amendment violation.  The court agrees.  "The Due Process Clause of the Fifth

Amendment applies to actions of the federal government and not to individual

activities of private actors."  *See Rank v. Nimmo*, 677 F.2d 692, 701 (9th Cir.

1982).   The court therefore GRANTS the City and County's Motion for failure to

state a Fifth Amendment claim.[5]

> **2.     *Municipal Liability of the City and County***

Under the heading "Plaintiff Has Not Alleged a Sufficient Basis for

§ 1983 Liability Against a Municipality," the City and County argues that "there is

no obvious need for the City to train its police officers to avoid violations of

citizens' constitutional rights, and Plaintiff has no evidence showing such a need."

---

[5] Defendants also mention that the Amended Complaint attempts to allege violations of Plaintiff's right to travel, engage in commerce, and associate freely, but argues only that "Plaintiff has pled no facts that enumerate constitutional violations pursuant to either the First Amendment or the Fifth Amendment."  City & County Mot. 14.  Except as addressed above, the court does not determine whether Plaintiff has alleged violations of any other Constitutional Amendments.

City & County Mot. 7-8.  Given the apparent disconnect between the City and County's heading and the argument made, it is unclear precisely what the City and County is arguing.

To the extent construed as arguing for summary judgment, the City and County has not met its "initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun,* 509 F.3d at 984 (citations omitted).  The City and County has failed to identify any pleadings, discovery responses, declarations, or other evidence that demonstrate Plaintiff's failure to establish his prima facie case.  In essence, the City and County's attempt to demonstrate an absence of a genuine issue of material fact is so feeble that Plaintiff was not provided fair notice that he was required to respond pursuant to Federal Rule of Civil Procedure 56.  On this basis alone, the court rejects the City and County's argument.

To the extent the City and County argues that the Amended Complaint fails to allege a basis for municipal liability, the court disagrees.  The Amended Complaint alleges municipal liability based on both "informal policy," and "failure to train."  Counts I, III and IV of the Amended Complaint allege a policy:

23.    The City endorsed and utilized a policy and practice of harassing and provoking law abiding citizens and assaulting and arresting them if they protest being prevented from continuing upon their lawful way against the Plaintiff.

39.    The Defendant City and County of Honolulu police officers engaged in a pattern or practice of the use of excessive force . . . .

54.    The Defendants [sic] actions constitute a pattern of conduct deliberately indifferent to the civil rights violations committed by police officers.  The Defendants instituted or allowed to be instituted the practice, policy, custom, or usage of rights violations as described in this Complaint.

Counts III and IV[6] allege municipal liability based on a failure to train:

38.    The Defendant City and County of Honolulu has demonstrated Deliberate Indifference to it's [sic] responsibility to hire, supervise, train, or control subordinate police officers in the performance of their duties during the investigative stops and or arrests of the citizens; thus leading to the violations of the Plaintiff's rights.

48.    The Defendant City is deliberately indifferent to it's [sic] responsibility to hire, supervise, train, or control subordinate police officers in the performance of their duties and during the arrest of the Plaintiff.

The court therefore DENIES the City and County's Motion that Plaintiff has not

alleged a basis for municipal liability.

---

[6] Because Count II does not state any basis for municipal liability, the court interprets this claim as lodged against Paclib only.

### 3.    *Qualified Immunity of Officer Paclib*

Paclib argues that he is entitled to qualified immunity as a matter of law because he (1) did not violate any of Plaintiff's constitutional rights, and (2) reasonably believed that his conduct did not violate any clearly established constitutional rights.  The court outlines the relevant framework, and finds that fact questions preclude summary judgment.

### a.    *Legal Framework*

The Ninth Circuit employs a three-part test in determining whether state officials are entitled to qualified immunity.[7]  *See Skoog v. County of Clackamas*, 469 F.3d 1221, 1229 (9th Cir. 2006).  The court must first answer a threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [Defendant's] conduct violated a constitutional right?"  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the answer is no, qualified immunity applies to the conduct.  If the answer is yes, the court proceeds to the second level of analysis.

---

[7] Paclib set forth a two-part test for qualified immunity that conflates the second and third prongs of the test, and which the Ninth Circuit also recognizes.  *See, e.g., Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175 (9th Cir. 2007); *Boyd v. Benton County*, 374 F.3d 773 (9th Cir. 2004).  Whether applying a two or three-part test as laid out below, the court considers the same factors.

The second prong of the qualified immunity analysis determines whether the right allegedly violated was "clearly established" at the time the state official acted.  *Id.* at 201-02.  This analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Id*. at 201.  A claim of a constitutional violation in a generalized sense is insufficient; instead, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Thus, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 202.  If the answer to this question is no, qualified immunity applies to the conduct.  If the answer is yes, the court turns to the third and final prong.

The final question the court must ask is "whether the [Defendant] could have believed, 'reasonably but mistakenly . . . that [his] conduct did not violate a clearly established constitutional right.'"  *Skoog*, 469 F.3d at 1229 (*quoting Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001)).

"[S]ummary judgment is appropriate only if Defendants are entitled to qualified immunity on the facts as alleged by the non-moving party." *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) (*citing Barlow v. Ground*, 943 F.2d 1132, 1136 (9th Cir. 1991)).

        *b.*      *Application of Framework*

Under this framework, material issues of fact remain that preclude summary judgment. Paclib first argues that he did not violate any of Plaintiff's constitutional rights because his use of force was objectively reasonable. For cases based on excessive force,[8] the question "is whether the use of force was 'objectively reasonable in light of the facts and circumstances confronting' the arresting officers." *Blankenhorn*, 485 F.3d at 477 (*quoting Graham*, 490 U.S. at 396. To determine reasonableness, the court:

> must balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake. Relevant factors to this inquiry include, but are not limited to, the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id.* (citation and quotation signals omitted).

---

[8] As discussed above, Plaintiff states a violation of his Fourth Amendment rights based on both improper arrest and excessive force. Paclib's Motion addresses only excessive force.

Viewing the facts in a light most favorable to Plaintiff, the court finds that a genuine issue of material fact exists whether Paclib violated Plaintiff's constitutional rights. Plaintiff asserts that without provocation, Paclib and other officers assaulted him, forced him to the ground, continued to beat him, and arrested him. Pl.'s Decl. ¶¶ 6-9. These facts, if ultimately proven, support of finding of excessive force. *See Blankenhorn*, 485 F.3d at 478 (finding that summary judgment was not appropriate where Plaintiff claimed that Defendants "gang tackled" him, used hobble restraints, and punched him).

Second, Paclib argues that he reasonably believed that his conduct did not violate any clearly established constitutional rights. Paclib's argument again relies on the court accepting Paclib's version of events. Resolving all disputes of fact in favor of Plaintiff, it appears that the officers had no basis to use force against Plaintiff. *See id.* at 481. ("We conclude that th[e] clear principle [that force is only justified when there is a need for force] would have put a prudent officer on notice that gang-tackling without first attempting a less violent means of arresting a relatively calm trespass suspect . . . was a violation of that person's Fourth Amendment rights."). The court therefore DENIES Paclib's Motion for Summary Judgment on Plaintiff's § 1983 claims.

21

**B.      Paclib's Motion to Dismiss Claims That Are Not Properly Lodged Against Him**

Paclib asks that the court grant summary judgment on Counts III, IV, and VI because they appear to state claims against the City and County only.

Count III, titled "Illegal Custom and Practice, Failure to Supervise Fourth and Fourteenth Amendment Claim Under Section 1983" includes allegations of the City and County's illegal practice and policy as a basis for liability; it includes no allegations of Paclib's wrongdoing. Count VI states a claim for respondeat superior, which does not apply to Paclib. Count IV, however, appears to state a claim against Paclib by alleging that he used excessive force on Plaintiff. Compl. ¶ 50. Accordingly, the court finds that Counts III and VI state claims against the City and County only.

**C.      Pendent State Law Claims**

Because the court finds that Plaintiff has stated claims pursuant to § 1983 and/or denied summary judgment, the court does not dismiss Plaintiff's pendant state claims, and instead addresses only Defendants' arguments attacking the merits of these claims.

///

///

22

### 1.    *Claims for False Arrest and Assault and Battery*

The City and County argues that Plaintiff (1) cannot allege a false arrest claim against it "simply because Officer Paclib was working for the City at the time," and (2) must allege a breach of duty for his assault and battery claim. City & County Mot. 11.  The City and County misunderstands the law.

The City and County can be held liable for a claim of false arrest, as well as other intentional torts, on the basis of respondeat superior.  *See Pourny v. Maui Police Dep't*, 127 F. Supp. 2d 1129 (D. Haw. 2000); *Tokuhama v. City & County of Honolulu*, 751 F. Supp. 1385, 1394 (D. Haw. 1989) (allowing respondeat superior liability for intentional torts of malicious prosecution and false arrest); *Orso v. City & County of Honolulu*, 56 Haw. 241, 248, 534 P.2d 489, 494 (1975) (holding that City and County could be "liable for the tortious conduct of the prosecuting attorney under the doctrine of respondeat superior" when the intentional torts of defamation, false arrest, false imprisonment and malicious prosecution were alleged).

Further, there is no requirement that Plaintiff plead a duty and breach of duty to maintain a claim against the City and County.  The City and County made this same argument (practically verbatim) in its Motion for Judgment on the Pleadings, and the court explained the following in its September 28, 2007 Order:

23

> For nonjudicial officers to be liable for state law tort claims, the plaintiff must prove malice by clear and convincing evidence. *Id.* "In line with the 'malice' requirement for nonjudicial officers, the State of Hawaii recognizes a respondeat superior theory for acts of agents of a municipality in regard to torts that an employee 'maliciously' commits in the scope of his authority." *Id.*
>
> A plaintiff must plead malice in the complaint. *Towse v. Hawaii*, 64 Haw. 624, 632, 647 P.2d 696, 702 (1982) ("[I]t is essential that the injured party *allege* and prove, to the requisite degree, that the official had been motivated by malice and not by an otherwise proper purpose." (emphasis added)).

Doc. No. 52, 21-22. Plaintiff's claims of false arrest and assault allege malice. *See* Compl. ¶¶ 55, 56, 62, 63, 76. The court therefore DENIES the City and County's requests to dismiss these claims.

## 2. *Respondeat Superior*

The City and County argue that this claim should be dismissed because "the doctrine of respondeat superior does not apply to 42 U.S.C. § 1983 claims." City & County Mot. 11. Because Plaintiff has alleged separate state law claims, the court rejects this argument.

///

///

///

///

24

### 3.    *Punitive Damages*[9]

Paclib argues that he is entitled to summary judgment because Plaintiff has no evidence that Paclib acted wantonly, oppressively, or maliciously.  Paclib Mot. 13.  The facts, taken in a light most favorable to Plaintiff, raise the question whether Paclib assaulted and arrested Plaintiff without provocation.  *See* Pl.'s Decl. ¶¶ 6-9.  The court DENIES Paclib's motion for summary judgment on this claim.

## V.  <u>CONCLUSION</u>

For the reasons stated above, the court GRANTS in part and DENIES in part the City and County's Motion for Summary Judgment, and DENIES Paclib's Motion for Summary Judgment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 28, 2008.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Alexander v. City & County of Honolulu et al.*, Civ. No. 06-00595 JMS/KSC; Order: (1) Granting in Part and Denying in Part Defendant City and County of Honolulu's Motion for Summary Judgment; and (2) Denying Defendant Paclib's Motion for Summary Judgment

---

[9]  The City and County also argued that it could not be held liable for punitive damages. The Amended Complaint does not appear to state a claim against the City and County, *see* Compl. ¶ 83 (reciting a claim against "the Individually named Defendants"), Plaintiff asserts that he claims punitive damages against Paclib only, Pl.'s Opp'n 26, and the court already granted the City and County's Motion for Judgment on the Pleadings on this issue.